**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Araceli Ledesma, *Plaintiff* v. Orland Park Wedding Center, Inc. *Defendant* | No. 22 CV 2925 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Araceli Ledesma ("Ledesma" or "Plaintiff") filed this lawsuit against her former employer, Orland Park Wedding Center, Inc. d/b/a/ House of Brides Couture ("House of Brides" or "Defendant"), alleging that Defendant violated the Americans with Disability Act ("ADA") and the Illinois Human Rights Act ("IHRA") when it fired her after she was hospitalized to tend to her disability. Ledesma brings counts under both the ADA and IHRA for failure to accommodate (Counts I and IV), termination based on a disability (Counts II and V), and retaliation (Counts III and VI). [Dkt. 1 at 4-12.][1] Currently before the Court is Defendant's motion for summary judgment on all claims. The motion is denied, except to the extent Ledesma seeks compensatory and punitive damages based on her retaliation claim under the ADA.

### I. Local Rule 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Legal arguments are permitted when responding to Rule 56.1(a)(2) or (b)(3) statements, but only to "make an objection, including objections based on admissibility, materiality, or absence of evidentiary support." L.R. 56.1(e)(2).

Regarding disputes, under Local Rule 56.1, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). In this case, Defendant's responses generally do not "cite specific evidentiary material that controverts" an asserted fact, or if any record evidence has been cited to, it does not support the assertion that a fact is genuinely disputed, in which case, the Court deems those facts admitted. *Id.*; *see also Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (where that party has failed to create a genuine dispute, the fact is deemed admitted).

A party that fails to comply with Local Rule 56.1 does so at their own peril. *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). "District courts are 'entitled to expect strict compliance' with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions." *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382

n.2 (7th Cir. 2008) (District courts possess "broad discretion to require strict compliance with Local Rule 56.1").

## II. Background

The following facts are taken from the parties' Local Rule 56.1 statements and supporting exhibits. [Dkts. 36, 38, 40.] These facts are undisputed except where a dispute is noted. The Court presents the facts in the light most favorable to Ledesma. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023).

Ledesma worked as a sales associate at Defendant's Glen Ellyn location from October 2018 until November 4, 2019, when she was terminated. [Dkt. 40 ¶ 3.] Ledesma's job consisted of selling wedding dresses, bridesmaids' dresses, and related apparel. [*Id.*] Dale and Eva Buziecki own House of Brides and had sole decision-making authority to terminate employees, but Jennifer Dedea-Schacht was the Glen Ellyn store manager. [*Id.* ¶¶ 4-7.] Megan Brehmer handles human resources work for Defendant, but has no firsthand knowledge of Ledesma's termination. [*Id.* ¶¶ 8, 11.]

According to Ledesma, she has suffered from a variety of psychiatric conditions since she was a child that manifest in various ways, including "sleep disturbances, eating disturbances, severe anxiety, questioning reality visual and auditory hallucinations, suicidal thoughts, paranoia, feelings of worthlessness and self-loathing, mood swings, and erratic behavior." [Dkt. 40 ¶ 1.] Ledesma avers she takes medication and receives psychiatric therapy to assist with her issues and that her conditions are normally under control, allowing Ledesma to behave normally. [*Id.* ¶ 2.] Ledesma occasionally has "flare ups", however, which curtail "her ability to think, perceive, see, hear, sleep, eat, drive, communicate, [and] work." [*Id.*] While Defendant

argues in its Rule 56.1 statements that Ledesma—who did not submit any diagnoses from medical professionals to corroborate her conditions—is not qualified to draw these conclusions[2], it is undisputed that Ledesma told Dedea-Schacht she suffered from psychiatric problems before she was hospitalized or terminated. [Dkt. 40 ¶ 15; Dkt. 38-2 at 40:15-42:1.]

Ledesma's first 11 months working at House of Brides proceeded without incident. [*Id.* ¶ 14.] According to Ledesma, however, in October 2019, her symptoms, including suicidal thoughts, worsened. After meeting with her therapist to discuss her current condition, the therapist informed Ledesma that she would be involuntarily committed to psychiatric care if she did not voluntarily submit. [*Id.* ¶¶ 16-17; Dkt. 38-1 at 26-27.] In mid-October, Ledesma informed Dedea-Schacht that she would need to be hospitalized around October 25, and that it would likely last 1 to 2 weeks. [Dkt. 40 ¶ 18.]

It is not disputed that on October 19, Ledesma confirmed to Dedea-Schacht that she indeed would be hospitalized on October 25. [*Id.* ¶ 19.] In text messages exchanged on October 23, Dedea-Schacht told Ledesma "We have a huge problem if your [sic] being admitted tomorrow. I need you Friday and Saturday. There needs to be more notice." [Dkt. 38-1 at 8.] Later that day, Ledesma exchanged text messages with Dale Buziecki, who told Ledesma (after requesting to see proof from her doctors

---

[2] On eight separate occasions in its Rule 56.1(c)(2) statement, Defendant makes identical objections to Plaintiff's competency to testify to any issues related to her medical condition. [Dkt. 40 ¶¶ 1-2, 15-18, 21-22.] Often times, Defendant uses this objection improperly, such as when Plaintiff merely told Defendant she would be hospitalized. [*Id.* ¶ 18.]

that she was hospitalized) "[i]f you have mental issues then maybe you should be taking care of that and not being concerned about this job." [Dkt. 40 ¶ 20; Dkt. 38-1 at 17-22.] There is no genuine dispute that Ledesma was hospitalized from October 26 through November 1, and was cleared by medical personnel to return to work on November 4. [Dkt. 40 ¶ 21; Dkt. 38-1 at 26-28.]

When Ledesma arrived to work on November 4, Dedea-Schacht promptly asked for a meeting. Ledesma brought three letters from medical personnel to the meeting corroborating both her absence and that the hospitalization occurred at the "clinical recommendation" of Ledesma's therapist. [Dkt. 40 ¶ 23; Dkt. 38-1 at 26-28.] She provided these letters to Dedea-Schacht, but Dedea-Schacht did not review them. [*Id.*] Ledesma contends that Dedea-Schacht terminated her at the meeting at the direction of Dale Buziecki, who was punishing Ledesma for her absence. [*Id.* ¶¶ 25-26.]

Defendant, on the other hand, maintains that Ledesma quit during the November 4 meeting after being presented with several disciplinary write ups. [Dkt. 36 ¶ 8.] The sole basis of this assertion, however, comes from an affidavit signed by Brehmer, who Defendant does not dispute has no personal knowledge regarding the circumstances surrounding the end of Ledesma's employment, and was not present at the November 4 meeting. [*See* Dkt. 40 ¶ 11.] Brehmer's affidavit does not point to any document or other source of authority for this contention, so Ledesma's version of the termination is therefore undisputed.[3]

---

[3] Defendant also admitted that it terminated Ledesma in its responses to Plaintiff's statement of additional facts. [*See* Dkt. 40 ¶ 3.]

5

### III. Analysis

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). The Court "'may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions [of the record] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. 317 at 323 (internal quotations omitted). Before a moving party can shift the burden to his opponent to show that there genuine issues of material fact, the moving party must "fulfill[] the obligation of setting forth the basic facts and law which, in their view, warranted summary judgment." *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). A moving party does not fulfill this burden by simply seeking summary judgment on all claims. *Id.* And while the

moving party can show that there is an absence of evidence on a material issue to shift the burden, it is not sufficient to simply claim there is no evidence. *See Id.*

Defendant has failed to meet this initial burden, which dooms the motion. Defendant's memorandum in support of summary judgment, which runs just over six pages in length, is entirely bereft of any application of the facts to the law cited. Instead, Defendant merely cites the applicable legal standard, and then summarily concludes that Plaintiff has offered no evidence in support of any element of her claims. For example, the full extent of Defendant's argument regarding Plaintiff's failure to accommodate claim is as follows:

> The ADA and the IHRA prohibit an employer's refusal to make reasonable accommodations for known mental or physical limitations of an otherwise qualified individual with a disability. *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018). The plaintiff bears the burden of establishing that she is a qualified individual who could perform the essential functions of her position. *Taylor-Novotny v. Health Alliance Med. Plans*, 772 F.3d 478, 493 (7th Cir. 2014). Additionally, a failure to accommodate claim fails if the plaintiff cannot first establish that she is a "qualified individual" with a disability. *Basith*, 241 F.3d at 932 ("[w]e need not decide whether Basith was denied reasonable accommodation in light of his failure to show a question of fact existed as to whether he was a qualified individual with a disability"); *Hoffman v. Caterpillar*, 256 F.3d 568, 572 (7th Cir. 2001) (explaining that a failure to accommodate under the ADA requires a prima facie showing that the plaintiff is or was a qualified individual with a disability). Here Plaintiff has no evidence to establish these elements.

[Dkt. 35 at 5-6.] Defendant's argument on why Plaintiff's retaliation claim fails is even more perfunctory:

> The ADA and the IHRA prohibit retaliation against employees who engage in statutorily protected activity. *Koty v. DuPage Cnty.*, 900 F.3d 515, 519 (7th Cir. 2018); *Terada v. Eli Lily & Co.*, 2015 IL App (5th) 140170, ¶ 25. To prevail on her retaliation claim, Plaintiff must establish that (1) she engaged in a protected activity, (2) she suffered a

7

> materially adverse action, and (3) a causal connection exists between the two. *Kotaska v. Fed. Express*, 966 F.3d 624, 632 (7th Cir. 2020) (ADA); *Terada*, 2015 IL App. (5th) 140170, ¶ 25 (IHRA). Here Plaintiff has no evidence to establish these elements.

[*Id.* at 6.] Both paragraphs could be pasted verbatim into *any* ADA claim filed by a plaintiff in this district. There is no specific reference to Plaintiff at all, nor any discussion of undisputed evidence as it applies to the elements of the claims. This style of briefing borders on frivolous. Indeed, if it were sufficient, then a moving party could seek summary judgment in every case by merely reciting the elements of a plaintiff's claims and summarily stating that plaintiff has no evidence. This would flip Rule 56, which requires the movant to *show*—not state—there is no genuine dispute of material facts, on its head.

Beyond being improper, Defendant is simply incorrect. As discussed at length above, Plaintiff has put forth considerable evidence, most of which is not disputed, that supports her claims. In short, Ledesma is disabled because of a lifelong mental impairment, and that was known to Defendant prior to her hospitalization or termination.[4] Then, during a "flare up" of her condition, Ledesma's therapist provided a clinical recommendation that Ledesma be hospitalized, something she communicated to Defendant in advance. Finally, upon being deemed fit to return to work by medical professionals, Ledesma returned to work with documentation corroborating the medical reasons for her absence, but she was promptly fired.

---

[4] In its reply brief, [Dkt. 39], Defendant argues for the first time that Plaintiff's claims fail because she is not disabled as defined under the ADA. Perhaps, but Defendant waived the argument by failing to raise it until the reply. *See e.g., Daugherty v. Harrington*, 906 F.3d 606, 610 (7th Cir. 2010); *Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012); *Edwards v. Dart*, 2022 WL 3543474, at *4 (N.D. Ill. Aug. 17, 2022).

Because there is evidence in the record that could lead a reasonable jury to conclude that Defendant refused to make reasonable accommodations for a known mental limitation on a qualified employee with a disability, and because there is evidence in the record from which a jury could reasonably conclude that Defendant retaliated against Ledesma by firing her for engaging in statutorily protected activity, summary judgment is not appropriate. Plaintiff's failure to accommodate, unlawful termination, and retaliation claims must all proceed to trial. Summary judgment is denied.

Only one additional argument, which is somewhat developed in Defendant's opening brief, needs addressing: whether Plaintiff is precluded from seeking monetary damages under the ADA. [Dkt. 35 at 6-7.] While Plaintiff is correct to note in her response brief that her claims are brought under Title I of the ADA, not Title III, [Dkt. 37 at 15], it is well-established that compensatory and punitive damages are not available for retaliation claims under the ADA. *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 965 (7th Cir. 2004). Compensatory and punitive damages are available under the ADA as revised for Plaintiff's failure to accommodate and termination based on her disability claims. 42 U.S.C. § 1981a(a)(2) (for violations of 42 U.S.C. § 12112, "the complaining party may recover compensatory and punitive damages"); *see also Kramer*, 335 F.3d at 965 (only claims listed under Section 12112 or 12112(b)(5) can recover compensatory and punitive damages). Because unlawful termination (42 U.S.C. § 12112(a)) and failure to accommodate (42 U.S.C. §

12112(b)(5)) are within these statutory provisions, compensatory and punitive damages are available under the ADA for these claims.

## IV. Conclusion

Defendant's motion for summary judgment is denied, except to the extent Plaintiff seeks compensatory or punitive damages based on her retaliation claim under the ADA.

Enter: 22-cv-2925
Date: January 24, 2024

_____
Lindsay C. Jenkins
United States District Judge